

**Capitol Corporate Services, Inc.**
PO Box 1831
Austin, TX 78767
Phone: (800) 345-4647  Fax: (800) 432-3622
rassop@capitolservices.com

## Service Of Process Transmittal Notice

| | | |
|---|---|---|
| SEAN P WESSEL<br>QUALITY STEEL CORP<br>2914 US HWY 61 S<br>CLEVELAND MISSISSIPPI 38732-0249 | **Date Processed:** | 01/10/2022 |
| | **Completed By:** | RENEE CALDECOTT |
| | **Delivery Method to Client:** | FEDEX 2 DAY LETTER |
| | **Tracking Number:** | 176774912772 |

Enclosed please find legal documents received on behalf of the client named below. These documents are being forwarded in accordance with your instructions.

| **Date / Time Received**<br>01/10/2022 12:30 PM in MISSISSIPPI | **Transmittal #**<br>MS-215923 | **Delivered to Agent by**<br>PROCESS SERVER |
|---|---|---|

| **With Regard to Client** |
|---|
| QUALITY STEEL CORPORATION |

| **Title of Case or Action** |
|---|
| CHRISTOPHER GREENSTREET VS. DCC PROPANE, LLC D/B/A DELUCA GAS AND QUALITY STEEL CORPORATION |

| **Case Number**<br>2021CV030018 | **Type of Document Served**<br>CITATION/SUMMONS |
|---|---|

| **Court Name** |
|---|
| DISTRICT COURT, CUSTER CO., CO |

| **Note** |
|---|
| |

1-215923G

| | |
|---|---|
| DISTRICT COURT, CUSTER COUNTY, COLORADO<br>205 S. 6th St. \| PO Box 60<br>Westcliffe, CO 81252 | |
| Plaintiff:     Christopher Greenstreet<br><br>v.<br><br>Defendant:    DCC Propane, LLC d/b/a Deluca Gas and<br>                    Quality Steel Corporation | ☐    **COURT USE ONLY**    ☐<br><br>Case No. 2021CV030018 |
| J. Keith Killian, Esq.            No. 9042<br>Joseph L. Fredenburg, Esq.    No. 55463<br>Timothy R. Wolfe, Esq        No. 56952<br>Killian, Davis, Richter & Kraniak, PC<br>202 North Seventh Street<br>Post Office Box 4859<br>Grand Junction, Colorado 81502<br>Telephone: (970) 241-0707<br>Attys. for Plaintiff: Christopher Greenstreet | Div. 1<br><br>Lynette M Wenner |
| **SUMMONS** | |

TO THE ABOVE NAMED DEFENDANT:

**Capitol Corporate Services, Inc.**
**Registered Agent for Quality Steel Corporation**
**248 E. Capital Street, Ste. 840**
**Jackson, MS 39201**

    **YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court an answer or other response to the attached Complaint. If service of the Summons and Complaint was made upon you within the State of Colorado, you are required to file your Answer or other response within twenty-one (21) days after such service upon you. If service of the Summons and Complaint was made upon you outside the State of Colorado, you are required to file your answer or other response within thirty-five (35) days after such service upon you. Your answer or counterclaim must

be accompanied with the applicable filing fee.

If you fail to file your answer or other response to the Complaint in writing within the applicable time period, the Court may enter judgment by default against you by the court for the relief demanded in the Complaint without further notice.

A copy of the Complaint and Civil Case Cover Sheet is served along with this Summons.

DATED this 7th day of January 2022.

Killian, Davis, Richter & Kraniak, PC

J. Keith Killian                    No. 9042
Joseph L. Fredenburg          No. 55466
Timothy R. Wolfe               No. 56952
Attorneys for Plaintiff

**This Summons is issued pursuant to Rule 4, C.R.C.P., as amended. A copy of the Complaint must be served with this Summons.**

**WARNING:** A valid summons may be issued by a lawyer and it need not contain a court case number, the signature of a court officer, or a court seal. The plaintiff has 14 days from the date this summons was served on you to file the case with the court. You are responsible for contacting the court to find out whether the case has been filed and obtain the case number. If the plaintiff files the case within this time, then you must respond as explained in this summons. If the plaintiff files more than 14 days after the date the summons was served on you, the case may be dismissed upon motion and you may be entitled to seek attorney's fees from the plaintiff.

- 2 -

⊠**FORM 1.2. DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT, COUNTERCLAIM, CROSS-CLAIM OR THIRD PARTY COMPLAINT AND JURY DEMAND**

| | |
|---|---|
| District Court Custer County, Colorado<br>Court Address:<br>205 S. 6th St. \| PO Box 60<br>Westcliffe, CO 81252 | |
| Plaintiff(s): Christopher Greenstreet<br>v.<br>Defendant(s): DCC Propane, LLC d/b/a Deluca Gas and Quality Steel Corporation | ▲ COURT USE ONLY ▲ |
| J. Keith Killian, Esq.        No. 9042<br>Joseph L. Fredenburg, Esq.    No. 55463<br>Timothy R. Wolfe, Esq.      No. 56952<br>Killian, Davis, Richter & Kraniak, PC<br>202 N. 7th Street<br>Grand Junction, CO 81501<br>Phone Number: 970-241-0707<br>FAX Number: 970-242-8375<br>E-mail: keith@killianlaw.com<br>       joseph@killianlaw.com<br>       tim@killianlaw.com | Case No. 2021CV30018<br><br>Div. 1 |

**DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT, COUNTERCLAIM, CROSS-CLAIM OR THIRD PARTY COMPLAINT AND JURY DEMAND**

1. This cover sheet shall be filed with the initial pleading of a complaint, counterclaim, cross-claim or third party complaint in every district court civil (CV) case. It shall not be filed in Domestic Relations (DR), Probate (PR), Water (CW), Juvenile (JA, JR, JD, JV), or Mental Health (MH) cases. Failure to file this cover sheet is not a jurisdictional defect in the pleading but may result in a clerk's show cause order requiring its filing.

2. Simplified Procedure under C.R.C.P. 16.1 **applies** to this case **unless** (check one box below if this party asserts that C.R.C.P. 16.1 **does not** apply):

☐ This is a class action, forcible entry and detainer, Rule 106, Rule 120, or other similar expedited proceeding, **or**

☒ This party is seeking a monetary judgment against another party for more than $100,000.00, including any penalties or punitive damages, but excluding attorney fees, interest and costs, as supported by the following certification:

> By my signature below and in compliance with C.R.C.P. 11, based upon information reasonably available to me at this time, I certify that the value of this party's claims against one of the other parties is reasonably believed to exceed $100,000."

**Or**

☐ Another party has previously filed a cover sheet stating that C.R.C.P. 16.1 does not apply to this case.

3. ☐ This party makes a **Jury Demand** at this time and pays the requisite fee. See C.R.C.P. 38. (Checking this box is optional.)

**Date: January 7, 2022**

/s/ J. Keith Killian
**Signature of Party or Attorney for Party**

**NOTICE**
This cover sheet must be served on all other parties along with the initial pleading of a complaint, counterclaim, cross-claim, or third party complaint.

bs
9799
1.7.22
JKK/TRW/JLF



DATE FILED: January 6, 2022 4:07 PM
FILING ID: 3743A281DC8DB
CASE NUMBER: 2021CV30018

DISTRICT COURT, CUSTER COUNTY, COLORADO
205 S. 6th St.
PO Box 60
Westcliffe, CO 81252

Plaintiff:     Christopher Greenstreet

v.

Defendant:     DCC Propane, LLC d/b/a Deluca
               Gas and Quality Steel Corporation

▲     **COURT USE ONLY**     ▲

Case No. 2021CV30018

J. Keith Killian, Esq.                      No. 9042
Joseph L. Fredenburg, Esq.                  No. 55463
Timothy R. Wolfe, Esq.                      No. 56952
KILLIAN DAVIS Richter & Kraniak, PC
202 North Seventh Street
Post Office Box 4859
Grand Junction, Colorado 81502
Telephone: (970) 241-0707
Attys. for Plaintiff: Christopher Greenstreet

Div. 1

### PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff, Christopher Greenstreet, through his attorneys of record, KILLIAN DAVIS

Richter & Kraniak, PC, hereby submits this Plaintiff's First Amended Complaint and, in support

thereof, alleges as follows:

## JURISDICTION AND VENUE

1.     On August 3, 2020, and at all other relevant times, Christopher Greenstreet ("Greenstreet") was a resident of Custer County, Colorado.

2.     Defendant, Quality Steel Corporation ("Quality Steel"), is a for-profit corporation incorporated in the State of Mississippi with its principal place of business in Mississippi.

3.     Quality Steel's principal office address is 2914 Highway 61 South, PO Box 249 Cleveland, MS 38732.

4.     At all relevant times, Quality Steel manufactured steel tanks and sold them into Colorado.

5.     Quality Steel purposefully targeted the Colorado market.

6.     Defendant, DCC Propane, LLC d/b/a Deluca Gas ("Deluca"), is a limited liability company incorporated in the State of Delaware with its principal place of business in Illinois.

7.     On August 3, 2020, and at all other relevant times, Deluca was authorized to do business in the State of Colorado and was doing business in Custer County, Colorado.

8.     Deluca is a registered trade name of DDC Propane, LLC, with a physical address at 10012 West Highway 50, Poncha Springs, CO 81242.

9.     The torts complained of occurred in Custer County, Colorado.

10.    This Court has subject-matter jurisdiction over these claims.

11.    Venue in Custer County is proper, pursuant to C.R.C.P. 98(c)(1) and (5).

## GENERAL ALLEGATIONS

**A propane explosion occurred while Greenstreet was installing propane-powered appliances in a single-family dwelling due to improperly odorized propane.**

12.    At all relevant times, Greenstreet was a licensed plumber in the State of Colorado.

13.    On August 3, 2020, Greenstreet was employed by Jerold A. Greenstreet d/b/a Rainbow Plumbing and Heating ("Rainbow"), an unincorporated business with a physical address at 320 County Road 241, Westcliffe, CO 81252.

2

14.    At approximately 3:08 p.m., Greenstreet, in furtherance of his employment responsibilities at Rainbow, was performing plumbing services at 302 Deer Springs Circle, Westcliffe, CO 81252 ("the Property").

15.    Greenstreet was installing propane-powered appliances in a single-family dwelling that was being built on the Property.

16.    Deluca supplied a propane tank to the Property prior to August 3, 2020.

17.    The propane tank was manufactured by Quality Steel.

18.    Quality Steel supplied the propane tank to Deluca.

19.    Deluca maintained ownership of the propane tank and leased it to the owner of the Property.

20.    The propane tank sat outside of the dwelling but on the Property.

21.    Deluca had installed a gas line from the propane tank to the dwelling.

22.    Deluca did not lock the gas line and left it accessible.

23.    Greenstreet installed the appliances and connected new lines from the appliances to the Deluca-installed gas line.

24.    Greenstreet was "purging" air from one of the new lines, a process by which a plumber holds a newly installed gas line open to release trapped air until the plumber detects the smell of propane.

25.    Purging the line to gas-powered appliances is a condition precedent to their operation.

26.    Prior to detecting the smell of propane, however, an explosion occurred, causing serious and significant burns to Greenstreet's head, face, and body ("the Incident").

27.    Propane, imperceptible by smell, had accumulated in the dwelling until it reached an explosive concentration.

28.    The ignition source is unknown.

3

### The propane was not properly odorized initially, and Deluca should have ensured it was.

29.     The addition of odorant allows clear, otherwise-odorless propane to be detectable by smell.

30.     A detectable amount of odorant, such as ethyl mercaptan, must be added to propane prior to delivery of propane meant for non-industrial use.

31.     The propane must be detectable, by smell, prior to reaching explosive concentrations.

32.     Deluca supplied the propane under private label.

33.     As the supplier of the propane, Deluca had a duty to ensure the propane was detectable, by smell, at below-explosive concentrations, prior to delivering the propane to the customer.

34.     Deluca failed to ensure the propane was properly odorized.

### The propane went through a process known as "odorant fade," which Deluca should have foreseen and prevented.

35.     Odorant fade can occur as the result of chemical oxidation reactions, whereby the odorant reacts with rust on the inside of the tank, rendering it imperceptible by smell.

36.     New propane tanks that sit too long before being filled are prone to internal rust when moisture and air get inside; thus, odorant fade is more common in new tanks.

37.     Odorant fade can also occur as the result of the odorant absorbing into the walls of new propane tanks and lines, also making it more common to occur in new systems.

38.     The risk of odorant fade in new systems can be mitigated by filling tanks as close to the time when the end user is to use the propane housed in the system.

39.     The propane tank that housed the propane involved in the Incident was new.

40.     The lines connecting the propane tank to the dwelling were new.

41.     The propane sat in the new propane tank and new line for approximately a month *or more* prior to use.

4

42.     The period of unuse was foreseeable given that the dwelling was still under construction.

43.     Quality Steel informed Deluca of the defect in its tanks that causes the tanks to absorb ethyl mercaptan.

44.     Quality Steel informed Deluca of the procedures necessary to mitigate the risk of odorant fade.

45.     Deluca knew or should have known about the potential for odorant fade.

46.     Deluca could have taken the following non-exhaustive list of precautions to prevent odorant fade:

   a.   waited to fill the tank closer to the time at which the propane was to be used;

   b.   locked the tank after delivery of the propane, until the propane was to be used, and checked the propane for smell at the time of unlocking;

   c.   checked the propane for smell periodically; and/or

   d.   anticipated odorant fade due to the use of a new steel tank and initially added more odorant to the propane to compensate for the anticipated odorant fade.

47.     Deluca was responsible for ensuring the odorant did not fade from the propane as a result of its tank-installation, tank-filling, and tank-servicing processes.

**The odorant fade occurred due to a manufacturing defect in the Quality Steel propane tank.**

48.     There is a defect in Quality Steel propane tanks, whereby the lining of the tanks absorb ethyl mercaptan until the lining is saturated.

49.     Quality Steel failed to adequately inform Deluca of the defect in its tanks that causes the tanks to absorb ethyl mercaptan.

50.     Even if Quality Steel informed Deluca of the risk of odorant fade, it failed to inform Deluca of the procedures necessary to mitigate the risk of odorant fade.

51.     The propane involved in the Incident had been odorized with ethyl mercaptan.

52.     The lining of the propane tank involved in the Incident absorbed substantially or completely the ethyl mercaptan in the propane.

**The defendants were ultimately responsible for the Incident.**

53.     The installation and filling of a propane tank are both inherently dangerous activities.

54.     Deluca was responsible for the proper odorization of the propane involved in the Incident and failed to uphold that responsibility.

55.     Quality Steel manufactured the defective propane tank that absorbed the odorant in the propane.

56.     The propane tank's propensity to absorb odorant made it inherently dangerous.

57.     Had the propane been properly odorized, Greenstreet would have closed the gas line well before the concentration of propane in the dwelling reached an explosive level.

58.     The defendants' actions and/or omissions were the actual and proximate causes of Greenstreet's injuries, damages, and losses.

### FIRST CLAIM FOR RELIEF
### AGAINST DELUCA:
### INHERENTLY DANGEROUS ACTIVITY
### STANDARD OF CARE
CJI-Civ. 9:7 (CLE ed. 2021)

59.     Greenstreet incorporates by reference each paragraph of this Complaint.

60.     The manufacture, sale, and distribution of propane are inherently dangerous activities.

61.     Deluca participated in the manufacture, sale, and distribution of the propane involved in the Incident.

62.     One carrying on an inherently dangerous activity such as the manufacture, sale, or distribution of propane gas must exercise the highest possible degree of skill, care, caution, diligence, and foresight with regard to that activity, according to the best technical, mechanical, and scientific knowledge and methods which are practical and available at the time of the claimed conduct which caused the claimed injury. The failure to do so falls below the required standard of care and is negligence.

63.     For all claims against Deluca, the appropriate definition of "negligence" is that set forth in the preceding paragraph and CJI-Civ. 9:7.

6

**SECOND CLAIM FOR RELIEF**
**AGAINST DELUCA:**
**STRICT PRODUCT LIABILITY**
**FOR DEFECTIVE PROPANE**
CJI-Civ.14:1
Section 13-21-401, et. seq., C.R.S.
7 CCR 1101-15

64.     Greenstreet incorporates by reference each paragraph of this Complaint.

65.     Deluca was a manufacturer of the propane involved in the Incident by way of preparing it prior to sale to a user or customer.

66.     Deluca was a manufacturer of the propane involved in the Incident by way of selling the propane under private label, with significant control over the manufacturing process, without disclosing who the actual manufacturer was.

67.     Deluca was engaged in the business of selling such propane for resale, use, or consumption.

68.     Deluca sold the propane involved in the Incident.

69.     The propane was defective for lack of proper odorization, and, because of the defect, the propane was unreasonably dangerous to a person who might reasonably be expected to use, consume, or be affected by the propane.

70.     All liquified-petroleum gases ("LP-Gases"), such as propane, must contain a detectable odorant, and the presence of such odorant must be verified by sniff-testing the propane prior to final delivery to the end-user customer. NFPA 58: Liquified Petroleum Gas Code, 2017 ("NFPA 58") (incorporated by reference into 7 CCR 1101-15).

71.     The propane did not comply with NFPA 58 at the time Deluca sold the propane involved in the Incident, which creates a presumption that the propane was defective. *See* CJI-Civ. 14:5.

72.     The propane was expected to reach the user or consumer without substantial change in the condition in which it was sold.

73.     The propane did reach the user or consumer without substantial change in the condition in which it was sold.

74.     Greenstreet was a person who would reasonably be expected to use, consume, or be affected by the propane.

7

75.     The defect in the propane caused the Incident.

76.     Greenstreet sustained injuries, damages, and losses as a result of the Incident.

## THIRD CLAIM FOR RELIEF
## AGAINST DELUCA:
## STRICT PRODUCT LIABILITY
## FOR PROPANE BEING DEFECTIVE DUE TO INADEQUATE
## WARNINGS AND INSTRUCTIONS
CJI-Civ. 14:4
Section 13-21-401, et. seq., C.R.S.

77.     Greenstreet incorporates by reference each paragraph of this Complaint.

78.     Deluca was a manufacturer of the propane involved in the Incident by way of designing, assembling, fabricating, producing, constructing, or otherwise preparing it prior to sale to a user or customer.

79.     Deluca was a manufacturer of the propane involved in the Incident, with significant control over the manufacturing process.

80.     Deluca sold the propane under private label without disclosing the name of the odorless propane manufacturer or the odorant manufacturer.

81.     Deluca was engaged in the business of selling such propane for resale, use, or consumption.

82.     Deluca sold the propane involved in the Incident.

83.     The propane, if not otherwise defective for lack of odorization at the time of delivery, became defective and unreasonably dangerous for lack of warnings or instructions for use regarding any risk that the odorant in the propane might become imperceptible.

84.     The possibility that the propane odorant might fade and become imperceptible is a specific risk associated with the intended or expected use of the propane, about which Deluca knew or should have known but is not apparent to the ordinary user of propane.

85.     Greenstreet was a person who would reasonably be expected to use, consume, or be affected by the propane.

86.     The failure to warn could have prevented, and thus caused, the Incident.

8

87.     Greenstreet sustained injuries, damages, and losses as a result of the Incident.

## FOURTH CLAIM FOR RELIEF
## AGAINST DELUCA:
## PRODUCT LIABILITY
## FOR BREACH OF EXPRESS WARRANTY
### CJI-Civ.14:8

88.     Greenstreet incorporates by reference each paragraph of this Complaint.

89.     Deluca sold the propane involved in the Incident.

90.     Deluca expressly warranted that the propane would be properly odorized.

91.     Greenstreet is a person who was reasonably expected to use, consume, or be affected by the propane.

92.     The improperly odorized propane was not as warranted.

93.     This breach of warranty caused Greenstreet injuries, damages, and losses.

94.     There was no time between learning of the breach and the Incident in which to inform Deluca of the breach.

## FIFTH CLAIM FOR RELIEF
## AGAINST DELUCA:
## PRODUCT LIABILITY
## FOR BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### CJI-Civ.14:10

95.     Greenstreet incorporates by reference each paragraph of this Complaint.

96.     Deluca sold the propane involved in the Incident.

97.     Greenstreet is a person who was reasonably expected to use, consume, or be affected by the propane.

98.     Deluca was a merchant with respect to the type of product involved.

99.     The improperly odorized propane was not of merchantable quality at the time of sale, because improperly odorized propane is not fit for use as a fuel for commercial or residential purposes.

100.    This breach of warranty caused Greenstreet injuries, damages, and losses.

101.    There was no time between learning of the breach and the Incident in which to inform Deluca of the breach.

### SIXTH CLAIM FOR RELIEF
### AGAINST DELUCA:
### PRODUCT LIABILITY
### FOR BREACH OF IMPLIED WARRANTY OF FITNESS FOR A
### PARTICULAR PURPOSE
CJI-Civ. 14:13

102.    Greenstreet incorporates by reference each paragraph of this Complaint.

103.    Deluca sold the propane involved in the Incident.

104.    Deluca impliedly warranted that the propane was suitable for the particular purpose of filling a new propane tank, sitting in that propane tank until appliances were connected thereto, and subsequently being detectable by smell.

105.    Greenstreet is a person who was reasonably expected to use, consume, or be affected by the propane.

106.    The propane was not suitable for the particular purpose for which it was warranted.

107.    This breach of warranty caused Greenstreet injuries, damages, and losses.

108.    There was no time between learning of the breach and the Incident in which to inform Deluca of the breach.

### SEVENTH CLAIM FOR RELIEF
### AGAINST DELUCA:
### PRODUCT LIABILITY
### FOR NEGLIGENT PROPANE MANUFACTURING
CJI-Civ.14:17
Section 13-21-401, et. seq., C.R.S.

109.    Greenstreet incorporates by reference each paragraph of this Complaint.

110.    Deluca was a manufacturer of the propane involved in the Incident by way of preparing it prior to sale to a user or customer.

10

111.    Deluca was a manufacturer of the propane involved in the Incident by way of selling the propane under private label, with significant control over the manufacturing process, without disclosing the name of the actual manufacturer.

112.    Deluca manufactured the propane involved in the Incident.

113.    Deluca was negligent in failing to ensure the propane was adequately odorized.

114.    Deluca's negligence created an unreasonable risk to Greenstreet, who might reasonably be expected to use, consume, or be affected by the propane, while he was using it in a manner the defendant should have reasonably expected.

115.    Greenstreet had injuries, damages, and losses that were caused by Deluca's negligence.

## EIGHTH CLAIM FOR RELIEF
## AGAINST DELUCA:
## PRODUCT LIABILITY
## FOR NEGLIGENCE *IN* MANUFACTURER'S/SELLER'S DUTY TO WARN
CJI-Civ. 14:19

116.    Greenstreet incorporates by reference each paragraph of this Complaint.

117.    Deluca, as either a manufacturer or a seller, of the propane knew, or in the exercise of reasonable care should have known, that the use of the propane involved in the Incident may be harmful or injurious to Greenstreet, either for lack of odorization or the risk that the odorant may become imperceptible.

118.    That risk of harm or injury was not obvious to Greenstreet.

119.    Deluca failed to use reasonable care to warn Greenstreet of the risk of harm or injury and/or the procedures to follow to avoid such harm or injury as a reasonably careful person should have done under the same or similar circumstances.

120.    The failure to do so was negligent.

121.    Greenstreet had injuries, damages, and losses that were caused by Deluca's negligence.

11

### NINTH CLAIM FOR RELIEF
### AGAINST DELUCA:
### NEGLIGENT SERVICES
CJI-Civ. 9:1

122.    Greenstreet incorporates by reference each paragraph of this Complaint.

123.    Greenstreet suffered injuries, damages, and losses.

124.    Deluca owned and installed the new propane tank on the Property.

125.    Deluca filled the new propane tank with propane while it was on the Property.

126.    Deluca owed a duty to ensure the services it performed did not create a foreseeable and unreasonable risk of harm to others.

127.    Deluca was negligent, either by not ensuring the propane was properly odorized at the time of delivery and/or by not mitigating the risk of odorant fade by taking any of the following non-exhaustive list of precautions:

     a.   waiting to fill the tank closer to the time at which the propane was to be used;

     b.   locking the tank after delivery of the propane, until the propane was to be used, and checking the propane for smell at the time of unlocking;

     c.   checking the propane for smell periodically; and/or

     d.   anticipating odorant fade due to the use of a new steel tank and initially adding more odorant to the propane to compensate for the anticipated odorant fade.

128.    Deluca breached its duty, creating a foreseeable and unreasonable risk to Greenstreet, when it installed the propane tank, filled it, and did nothing to prevent odorant fade.

129.    Deluca's negligence was *a* cause of Greenstreet's injuries, damages, and losses.

### TENTH CLAIM FOR RELIEF
### AGAINST DELUCA:
### NEGLIGENCE PER SE
CJI-Civ. 9:14
7 CCR 1101-15

130.    Greenstreet incorporates by reference each paragraph of this Complaint.

12

131.   At the time of the Incident, 7 CCR 1101-15 was in effect.

132.   NFPA 58 is incorporated by reference into 7 CCR 1101-15.

133.   All liquified-petroleum gases ("LP-Gases"), such as propane, must contain a detectable odorant, and the presence of such odorant must be verified by sniff-testing the propane prior to final delivery to the end-user customer. NFPA 58: Liquified Petroleum Gas Code, 2017 ("NFPA 58") (incorporated by reference into 7 CCR 1101-15).

134.   Deluca violated NFPA 58 by delivering propane without perceptible odorant.

135.   At the time Deluca delivered the propane, Deluca knew the odorant was being placed into a new Quality Steel propane tank.

136.   Deluca knew or should have known the new Quality Steel propane tank had a propensity to absorb odorant in propane.

137.   Under these foreseeable circumstances, Deluca failed to deliver propane, which would have a detectable odorant, upon final delivery to the end-user customer.

138.   Deluca's violation of NFPA 58 constituted negligence.

139.   One of the purposes of NFPA 58 and its incorporation into Colorado law was to protect downstream users of propane, such as Greenstreet.

140.   One of the purposes of NFPA 58 and its incorporation into Colorado law was to protect against the types of injuries and losses Greenstreet sustained.

141.   Deluca's negligence caused Greenstreet's injuries, damages, and losses.

**ELEVENTH CLAIM FOR RELIEF**
**AGAINST DELUCA:**
**NEGLIGENCE – RES IPSA LOQUITUR**
CJI-Civ. 9:17

142.   Greenstreet incorporates by reference each paragraph of this Complaint.

143.   Greenstreet had injuries, damages, and losses caused by the improperly odorized propane.

144.   Such injuries, damages, and losses would not have occurred unless someone was negligent in the manufacturing or handling of the propane.

13

145.   At the time and in the way such negligence probably occurred, it was more likely that the negligence of Deluca, rather than the negligence of anyone else, caused Greenstreet's injuries, damages, and losses.

## TWELFTH CLAIM FOR RELIEF
## AGAINST QUALITY STEEL:
## INHERENTLY DANGEROUS ACTIVITY
## STANDARD OF CARE
CJI-Civ. 9:7

146.   Greenstreet incorporates by reference each paragraph of this Complaint.

147.   The manufacture, sale, and distribution of propane tanks, which are intended to contain propane gas, is an inherently dangerous activity.

148.   Quality Steel participated in the manufacture, sale, and distribution of the propane tank involved in the Incident.

149.   One carrying on an inherently dangerous activity such as the manufacture, sale, or distribution of propane tanks must exercise the highest possible degree of skill, care, caution, diligence, and foresight with regard to that activity, according to the best technical, mechanical, and scientific knowledge and methods which are practical and available at the time of the claimed conduct which caused the claimed injury. The failure to do so falls below the required standard of care and is negligence.

150.   For all claims against Quality Steel, the appropriate definition of "negligence" is that set forth in the preceding paragraph and CJI-Civ. 9:7.

## THIRTEENTH CLAIM FOR RELIEF
## AGAINST QUALITY STEEL:
## STRICT PRODUCT LIABILITY
## FOR MANUFACTURE OF DEFECTIVE PROPANE TANK
CJI-Civ.14:1
Section 13-21-401, et. seq., C.R.S.

151.   Greenstreet incorporates by reference each paragraph of this Complaint.

152.   Quality Steel was a manufacturer of propane tanks.

153.   Quality Steel was engaged in the business of selling such propane tanks for resale, use, or consumption.

154.   Quality Steel sold the propane tank involved in the Incident.

14

155.   The propane tank was defective, and, because of the defect, the propane tank was unreasonably dangerous to a person or to the property of a person who might reasonably be expected to use, consume, or be affected by the propane tank.

156.   The propane tank was defective at the time it was sold by Quality Steel or left its control.

157.   The propane tank was expected to reach the user or consumer without substantial change in the condition in which it was sold.

158.   The propane tank did reach the user or consumer without substantial change in the condition in which it was sold.

159.   Greenstreet was a person who would reasonably be expected to use, consume, or be affected by the propane tank.

160.   Greenstreet had injuries, damages, and losses.

161.   The defect in the propane tank was a cause of Greenstreet's injuries, damages, and losses.

**FOURTEENTH CLAIM FOR RELIEF
AGAINST QUALITY STEEL:
STRICT PRODUCT LIABILITY
FOR PROPANE TANK BEING DEFECTIVE DUE TO INADEQUATE
WARNINGS AND INSTRUCTIONS**
CJI-Civ. 14:4

162.   Greenstreet incorporates by reference each paragraph of this Complaint.

163.   The propane tank, if not otherwise defective in its manufacture or design, became defective and unreasonably dangerous for lack of adequate warnings or instructions for use regarding odorant fade.

164.   The warnings and instructions for use failed to inform the ordinary user of the specific risk of odorant fade involved in the intended and reasonably expected use of the propane tank or any failure to properly follow instructions when using the propane tank for its intended and reasonably expected use.

165.   Proper warning and instructions could have prevented the Incident; thus, inadequate warnings and instructions for use caused the Incident.

15

166.    Greenstreet sustained injuries, damages, and losses as a result of the Incident.

### FIFTEENTH CLAIM FOR RELIEF
### AGAINST QUALITY STEEL:
### PRODUCT LIABILITY
### FOR BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
CJI-Civ.14:10

167.    Greenstreet incorporates by reference each paragraph of this Complaint.

168.    Quality Steel sold the propane tank involved in the Incident.

169.    Greenstreet is a person who was reasonably expected to use, consume, or be affected by the propane tank.

170.    Quality Steel was a merchant with respect to propane tanks.

171.    The propane tank was not of merchantable quality at the time of sale.

172.    This breach of warranty caused Greenstreet injuries, damages, and losses.

173.    There was no time between learning of the breach and the Incident in which to inform Quality Steel of the breach.

### SIXTEENTH CLAIM FOR RELIEF
### AGAINST QUALITY STEEL:
### PRODUCT LIABILITY
### FOR BREACH OF IMPLIED WARRANTY OF FITNESS FOR A
### PARTICULAR PURPOSE
CJI-Civ. 14:13

174.    Greenstreet incorporates by reference each paragraph of this Complaint.

175.    Quality Steel sold the propane tank involved in the Incident.

176.    Quality Steel impliedly warranted that the propane tank was suitable for the particular purpose of being used to hold propane without absorbing the odorant in the propane to the extent it is undetectable by smell or otherwise posing an unreasonable danger to downstream users.

177.    Greenstreet is a person who was reasonably expected to use, consume, or be affected by the propane tank.

16

178.    The propane tank was not suitable for the particular purpose for which it was warranted.

179.    This breach of warranty caused Greenstreet injuries, damages, and losses.

180.    There was no time between learning of the breach and the Incident in which to inform Quality Steel of the breach.

**SEVENTEENTH CLAIM FOR RELIEF**
**AGAINST QUALITY STEEL:**
**PRODUCT LIABILITY**
**FOR NEGLIGENT PROPANE TANK MANUFACTURING**
CJI-Civ.14:17

181.    Greenstreet incorporates by reference each paragraph of this Complaint.

182.    Quality Steel manufactured the propane tank involved in the Incident.

183.    Quality Steel was negligent by failing to exercise reasonable care to prevent the propane tank from creating an unreasonable risk of harm to the person or property of one who might reasonably be expected to use, consume, or be affected by the propane tank while it was being used in a manner Quality Steel might have reasonably expected.

184.    Greenstreet was one of those persons Quality Steel should reasonably have expected to use, consume, or be affected by the propane tank.

185.    Greenstreet had injuries, damages, and losses that were caused by Quality Steel's negligence, while the propane tank was being used in a manner Quality Steel should reasonably have expected.

**EIGHTEENTH CLAIM FOR RELIEF**
**AGAINST QUALITY STEEL:**
**PRODUCT LIABILITY**
**FOR NEGLIGENCE IN MANUFACTURER'S/SELLER'S DUTY TO**
**WARN**
CJI-Civ. 14:19

186.    Greenstreet incorporates by reference each paragraph of this Complaint.

187.    Quality Steel both manufactured and sold the propane tank involved in the Incident.

17

188.    Quality Steel knew or in the exercise of reasonable care should have known that the use of the propane tank may be harmful or injurious to a consumer or user.

189.    Quality Steel knew or in the exercise of reasonable care should know that the risk of harm or injury was not obvious to a reasonable consumer or user.

190.    Quality Steel failed to take reasonable care to warn the consumer or user of the risk of harm or injury.

191.    The failure to do so was negligent.

192.    Greenstreet has injuries, damages, and losses that were caused by Quality Steel's negligence.

## NINETEENTH CLAIM FOR RELIEF
## AGAINST DELUCA AND QUALITY STEEL:
## CIVIL CONSPIRACY
CJI-Civ. 27:1
Section 13-21-115.5(4), C.R.S.
Resolution Trust Corp. v. Heiserman, 898 P.2d 1049, 1055 and 1057 (Colo. 1995)

193.    Greenstreet incorporates by reference each paragraph of this Complaint.

194.    Section 13-21-115.5(4), C.R.S., was in effect at the time of the Incident.

195.    Section 13-21-115.5(4), C.R.S., in relevant part, states, "Joint liability shall be imposed on two or more persons who consciously conspire and deliberately pursue a common plan or design to commit a tortious act."

196.    The facts "reveal some indicia of an agreement sufficient to prove that the defendants consciously conspired and deliberately pursued a common plan or design that resulted in a tortious act."

197.    The "tortious act" committed by the defendants included "conduct other than breach of contract that constitutes a civil wrong and causes injury or damages."

198.    Quality Steel knew of the risk of odorant fade in its tanks.

199.    Deluca knew or should have known of the risk of odorant fade and how to prevent it from harming a downstream user.

18

200. Deluca and Quality Steel agreed, by words or conduct, to pursue the common plan of introducing Quality Steel tanks into the Colorado market with knowledge of their propensity to produce odorant fade.

201. Through the series of negligent and other tortious acts pled herein, Deluca and Quality Steel failed to prevent or sufficiently mitigate the risk of odorant fade.

202. Deluca and Quality Steel performed these negligent and tortious acts in furtherance of their common plan.

203. Greenstreet has injuries, damages, and losses.

204. Greenstreet's injuries, damages, and losses were caused by the negligent and tortious acts performed by Deluca and Quality Steel in furtherance of their common plan.

205. The defendants are jointly liable to Greenstreet for the negligent conduct each committed.

## DAMAGES
### CJI-Civ. 6:1 and 6:11-13

206. Greenstreet has had to the present time and will probably have in the future noneconomic losses or injuries, including: physical and mental pain and suffering, inconvenience, emotional stress, impairment of the quality of life, and other recoverable noneconomic losses which may be proven at trial.

207. Greenstreet has had to the present time and will probably have in the future economic losses or injuries, including: past loss of earnings, future loss of earning capacity, past and future reasonable and necessary medical, hospital, loss of household services, and other expenses, and other recoverable economic losses of which may be proven at trial.

208. Greenstreet suffers from permanent impairment and disfigurement.

209. Greenstreet has suffered the loss and destruction of personal property.

WHEREFORE, plaintiff respectfully requests:

    a. Judgment to be entered against defendants for a monetary sum, in an amount to be proven at trial;

    b. Pre-judgment and post-judgment interest;

    c.  Costs of litigation, including expert witness fees; and

    d.  Such other and further relief as the Court deems just and proper.

DATED this 6th day of January 2022.

KILLIAN DAVIS Richter & Kraniak, PC

_/s/ J. Keith Killian_

| | |
|---|---|
| J. Keith Killian | No. 9042 |
| Joseph L. Fredenburg | No. 55463 |
| Timothy R. Wolfe | No. 56952 |
| Attorneys for Plaintiff | |

Plaintiff's Address:
1966 County Road 241
Westcliffe, CO  81252

20